## In re Enrollment of Voters in Chartiers Township

*Bloom & Bloom*, for petitioners.

HUGHES, J., August 28, 1935.—On July 20, 1935, it was the duty of assessors in townships to be at the polling places from 10:00 a.m. to 3:00 p.m., and from 6:00 p.m. to 9:00 p.m. (standard time). At or about 8:55 p.m. (standard time) John Mazza and others sought to present to the assessor of the second precinct of Chartiers

Township 31 certificates of enrollment of the following tenor:

"Certificate of Enrollment

"Date July 17th, 1935

"I, Bennie Murdoch, a duly qualified voter residing in Chartiers Twp., Second Precinct election district, hereby declare that I desire to be enrolled as a member of the Republican party and express my desire to vote the ticket of the Republican party at the primary election next ensuing, and request that my name be enrolled on the assessor's list as a member of said party for the purpose of participating in said primary or primaries.

"BENNIE MURDOCH,

"Signature of Elector.

"Witness: JOHN MAZZA.　　　　"Houston, Pa.

"Address."

Those possessing the certificates of enrollment claimed to be acting as the agents for the signers of the certificates for the purpose of changing their registration. When they arrived at the polling place the assessor had left, he claiming to have remained there until 9:02 p.m. (standard time), and that John Mazza and others had not arrived at the polls prior to the time of his leaving. The assessor not being there when they arrived, they were unable to present to him the certificates of enrollment, and they have now petitioned to have the registration of those whose certificates of enrollment they held changed in accordance with the tenor of said certificates.

The Act of May 22, 1933, P. L. 908, sec. 2, provides in part as follows:

"It shall be the duty of the said assessor to be present at the election house of the said election district, during the day next preceding the day fixed by the third section of this act for returning the lists to the county commissioners, from ten ante meridian to three post meridian, and from six post meridian to nine post meridian, for the purpose of hearing and acting upon applications to be made under the provisions of this section, or relating to

names upon said list, or that are sought to be placed thereon, or struck therefrom; and it shall be his duty to correct said original list by adding thereto, *upon personal application,* the names of persons entitled to vote not already thereon, and by striking therefrom fictitious names, or names of persons who may have died or removed from said district". (Italics ours.)

Under the language of this act, it would appear that the signing of such a certificate and sending another to the polls where the assessor is sitting, is not a compliance with the requirements thereof. So, even had the assessor been at the polling place when Mazza and others arrived, he would not be required to change the registration of the signers of the certificates. We are of the opinion that one who seeks to have his party affiliation changed after the original voter list is made up should appear in person at the time specified by law for such purpose. As was said in In re Registry of Voters, 81 Pitts. 447:

"Personal contact with the elector at his residence or a personal call by the elector upon the registry assessor at the time and place appointed by the law would be the best practice. No doubt it would be necessary and proper at times for one member of a family to speak and act for others in the family, and it might be that a registry assessor could safely recognize others than members of a family as the agents for electors in delivering certificates of enrollments to him, but there is nothing in the act to sustain the procedure followed in this case. Such a practice would open the door to widespread fraud and imposition on electors."

Although the court there was speaking of the Act of July 25, 1913, P. L. 1043, this same language aptly applies to the situation confronting us. We, therefore, are required to refuse the relief prayed for.

And now, to wit, August 28, 1935, the prayer of the petition is denied.